**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **HERBERT COLES, ET AL.,** | * | |
| | * | |
| Plaintiffs | * | |
| | * | **Civil No. PJM 14-450** |
| v. | * | |
| | * | |
| **VON PARIS ENTERPRISES,** | * | |
| **INC, ET AL.** | * | |
| | * | |
| Defendants | * | |

**MEMORANDUM OPINION**

Herbert Brown and Richard Coles ("Plaintiffs") have sued Von Paris Enterprises, Inc. ("Von Paris") and Wesley Singleton ("Singleton"), alleging violations of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-505, 3-502, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. § 3-415(a), and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207. They also allege unjust enrichment. Plaintiffs and Von Paris have now reached a settlement, and ask for the Court to approve the settlement and dismiss with prejudice all claims in the Amended Complaint. For the reasons that follow, the Court **GRANTS** the Joint Motion for Settlement [Dkt. 33], **VACATES** the entry of default against Defendant Wesley Singleton [Dkt. 30], and **DISMISSES WITH PREJUDICE** the remaining counts of the Amended Complaint [Dkt. 25] as to all Defendants.

**I.**

Factual and Procedural Background

Von Paris is engaged in the business of providing moving, shipping and storage services, including transporting furniture and personal belongings for its customers, usually in connection

with their change of personal residence. Von Paris transports such goods across state lines throughout the Mid-Atlantic region. In 2013, Singleton worked as an owner-operator pursuant to an independent contractor agreement with Von Paris, providing moving services in his personally-owned moving truck. Singleton first hired Plaintiff Brown to assist him with moving orders, and subsequently hired Brown's friend, Plaintiff Coles, to assist him.

After having Plaintiffs travel to several states for him, Singleton offered to pay Plaintiffs $450.00 per week for their work. Plaintiffs agreed. Von Paris alleges that it did not know how much Singleton agreed to pay Plaintiffs and did not participate in any decision regarding Plaintiffs' compensation by Singleton. Von Paris also maintains that it did not participate in Singleton's decision to hire either Brown or Coles. Plaintiffs were paid all of their compensation directly by Singleton. Von Paris paid Plaintiffs no wages or other form of compensation at any time.

Plaintiffs regularly reported to a Von Paris facility in Savage, Maryland in connection with their work, including the loading and unloading of goods. They unquestionably performed moving services for the benefit of Von Paris customers and in furtherance of Von Paris's business, traveling throughout Maryland and other states in the Mid-Atlantic region. While performing their work, Singleton and Plaintiffs rode in Singleton's truck and loaded and unloaded the belongings of Von Paris customers at the customers' homes. Plaintiffs also unloaded and packed boxes at Von Paris' facility in Savage, Maryland. Singleton alone supervised Plaintiffs' day-to-day performance of their duties.

After Plaintiffs began working for Singleton, Von Paris required Plaintiffs, as a condition of working for Von Paris customers, to complete an employment application and undergo a background check. Von Paris also required Plaintiffs, as a condition of working for Von Paris

customers, to wear Von Paris uniforms during their work. Plaintiffs allege further that they were required to attend a mandatory training on packing and shipping for Von Paris customers. Von Paris denies that the training was required of Plaintiffs and maintains instead that attendance at any such training offered by Von Paris was voluntary for Plaintiffs. Except for the above-mentioned application and background check information, Von Paris did not maintain any records of Plaintiffs' work, including records of work hours or compensation. Von Paris alleges that it had no knowledge of Plaintiffs' actual work hours, since it did not directly supervise or oversee Plaintiffs' day-to-day work. Plaintiffs did not record their work hours in any way, such as through a time clock or time sheets.

Plaintiffs allege that Brown worked for Singleton from June to mid-October 2013, and Coles worked from July to mid-October 2013. Plaintiffs allege that they were promised pay at the fixed rate of $450 hours per week, regardless of the number of hours per week they worked. Plaintiffs allege that they stopped working for Singleton because he was not paying them their promised compensation. They say they were paid as follows: both Plaintiffs received $400 for the month of July; $600 for the month of August; and $200.00 for the month of September. Brown was never compensated for the entire month of June.

Plaintiffs allege that they are owed approximately $5,100 for hours worked between July and October and overtime pay estimated to be more than $3,000 for each man. Specifically, they allege that they worked an average of 16 hours of overtime each week for 12 weeks, for a total of 192 overtime hours each. Brown is also owed approximately $1,800 for the entire month of June.

Plaintiffs approached Mack Kean, a Von Paris employee, about their pay and were told that Singleton was the responsible party. Plaintiffs allege that after complaining about not receiving their agreed upon compensation to Singleton, he stopped calling them for work. Von

Paris maintains that it notified Singleton in October 2013 that as a result of Coles's background check, Coles did not meet Von Paris's background security criteria and that he could no longer work on Von Paris job orders. Coles indicates he was not notified of that fact at that time, and that he did not learn of it until he received a letter from Von Paris after Coles's counsel sent a demand letter to Von Paris threatening litigation.

Von Paris alleges that it has no knowledge or information regarding the amount Singleton paid each Plaintiff. Von Paris maintains, however, that after Plaintiffs' work ended, Plaintiffs approached Von Paris and claimed wages owed by Singleton that were much less than the numbers they have demanded in this litigation—i.e., by approximately several thousand dollars each.

On February 17, 2014, Plaintiffs filed a Complaint in this Court against Von Paris and Singleton alleging violations of the FLSA, the MWPCL, and the MWHL, and a claim for unjust enrichment [Dkt. 1]. On April 14, 2014, Von Paris moved to dismiss, and alternatively sought an order of summary judgment [Dkt. 9]. After the parties fully briefed the disputed issues, a hearing was held on July 14, 2014. The Court granted Von Paris's Motion to Dismiss or in the Alternative Motion for Summary Judgment as to Count III (failure to keep records) and Count IV (fraudulent misrepresentation) of the original Complaint, but denied the Motion in all other respects [Dkt. 17]. Plaintiffs subsequently filed an Amended Complaint on July 24, 2014 [Dkt. 25], and Von Paris filed an Answer on August 22, 2014 [Dkt. 29].

On October 10, 2014, the parties filed a letter with the Court under Local Rule 111, advising the Court that the parties were entering into a settlement agreement [Dkt. 32]. On October 24, 2014, the parties filed a Joint Motion for Settlement Approval and Dismissal with Prejudice (the "Joint Motion") [Dkt. 33]. On November 20, 2014, the Court ordered the parties

to file proposed findings of fact and conclusions of law regarding each of the disputed issues, as well as Plaintiffs' request for attorney's fees [Dkt. 34].

**II.**

Standard of Review

Congress enacted the FLSA to protect workers from the poor wages and long hours that may result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In reviewing FLSA settlements for approval, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Saman*, 2013 WL 2949047, at *3 (citing *Hoffman v. First Student, Inc.*, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect[] a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* The Court considers (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at

*10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)).

**III.**

Bona Fide Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17. Here, the parties point to five separate factual and legal disputes as to Von Paris's liability under the FLSA.[1]

First, the parties dispute whether an employment relationship existed between each of the Plaintiffs and Von Paris. Plaintiffs allege that an employment relationship existed between them. Von Paris denies that an employment relationship existed and maintains instead that Plaintiffs were merely casual laborers engaged by Singleton, an independent contractor of Von Paris.

The establishment of an employment relationship is necessary for liability under the FLSA, MWHL and MWPCA. Thus, a finding that there was no employment relationship will preclude any and all liability under those laws. Maryland courts give broad interpretation to the term "employer" in the context of Maryland wage and hour law to "effectuate the FLSA's broad remedial purposes." *Newell v. Runnels*, 967 A.2d 729, 771 (2009). With that goal in mind, employees may have more than one employer at any given time for the purposes of FLSA liability. "So-called 'joint employers' are liable, 'both individually and jointly, for compliance

[1] The parties also dispute how much the Plaintiffs are owed in base wages under the MWPCL, Md. Code Ann., Lab. & Empl. § 3-507, and whether treble damages are available under the MWPCL, Md. Code Ann., Lab. & Empl. § 3-507.2(b). While these disputes also appear to be *bona fide*, they are not disputes relevant to Von Paris's liability under the FLSA *vel non*.

with all of the applicable provisions of the [FLSA], including the overtime provisions.'" *Id.* (citing *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 305 (4th Cir. 2006)). Whether an employment (or joint employment) relationship exists under the FLSA, MWHL and MWPCA turns on the economic reality test. "The joint employment inquiry must 'take[] into account the real economic relationship between the employer who uses and benefits from the services of the workers and the party that hires or assigns the workers to that employer.'" *Id.* at 772 (quoting *Schultz*, 466 F.3d at 306). Courts use the four-pronged economic realities test, which examines "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*; *see also Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 689 (D. Md. 2010); *Campusano v. Lusitano Construction LLC*, 56 A.3d 303, 309 (Md. App. 2012).

Here, there is a dispute as to whether Plaintiffs satisfy the first prong—whether Von Paris had the power to hire and fire Plaintiffs. Plaintiffs allege that this prong is satisfied because Von Paris required Plaintiffs to wear uniforms, to complete an application and undergo a background check as a condition of performing work for Von Paris customers, to attend training on how to pack, load and unload boxes, and because Plaintiffs reported to work at Von Paris headquarters and worked on job orders provided by Von Paris in furtherance of Von Paris' business. In addition, Von Paris made the decision that Coles could not work for Von Paris customers because he failed the background check.

Von Paris maintains that its imposition of a background check on Plaintiffs for quality control purposes, and its right to refuse to allow any person who failed that test to work for its customers do not support an employment relationship with Von Paris. It alleges that Singleton

still could hire and employ any laborers as long as they passed Von Paris's background check, and could fire them for any reason, even if they passed that background check. Likewise, Singleton retained the authority to hire and fire Plaintiffs or any other laborers as long as they satisfied Von Paris's standards.

There is also a dispute as to whether Plaintiffs satisfy the second prong—whether Von Paris supervised and controlled Plaintiffs' work schedules or conditions of employment. Plaintiffs allege that this prong is satisfied because Von Paris determined Singleton's—and thus Plaintiffs'—work orders and issued a schedule for customer pick-ups and drop-offs, and because Von Paris required Plaintiffs to wear Von Paris uniforms while on duty and to attend training. Von Paris denies that it required Plaintiffs to attend training and maintains that the other facts do not support an employment relationship because, while Von Paris determined customer assignments and schedules, it exercised no supervision or control over Plaintiffs' day-to-day work; Singleton alone supervised Plaintiffs. Von Paris also argues that the uniform requirement was a reasonable quality control standard designed for the protection of customers.

The third prong—whether Von Paris determined the rate and method of Plaintiffs' payment—weighs in Von Paris's favor because it is undisputed that Singleton alone determined Plaintiffs' rate and method of payment and actually paid them.

There is a dispute as to whether Plaintiffs' satisfy the fourth prong—whether Von Paris maintained employment records for Plaintiffs. Plaintiffs allege that this is satisfied because Von Paris maintained an employment application and background check documents. Von Paris maintains that this prong is not satisfied because the employment application was used only for the purpose of providing information for a background check, and that it maintained no other records of Plaintiffs' work, including records of their compensation and work hours.

Because Plaintiffs allege that three of the four prongs of the foregoing test are satisfied, it has sufficiently alleged an employment relationship. Von Paris maintains that Plaintiff has established none of the four prongs of the foregoing test, and thus, no employment relationship exists.

Second, the parties dispute whether Plaintiffs are exempt from the overtime pay requirements of the FLSA and MWHL because they fall under the "Motor Carrier exemption." A finding that Plaintiffs were exempt would preclude any and all liability under the FLSA and MWHL.

The FLSA and MWHL contain an exemption from the overtime pay requirements for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [the Motor Carrier Act]." 29 U.S.C. § 213(b)(1); Md. Code Ann., Lab. & Empl. § 3-415(c)(1). Under the Motor Carrier Act, the Secretary of Transportation has the power to prescribe requirements for the qualifications and maximum hours of service of employees of a "motor carrier," which in turn is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. §§ 13102(14), 31502(b). The exemption covers an employee who works as a "loader," which is "an employee . . . whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country." 29 C.F.R. § 782.5(a).

Von Paris maintains that Plaintiffs fell within that exemption because it is a motor carrier and Plaintiffs were loaders within the meaning of the Motor Carrier Act.

Third, the parties dispute the number of overtime hours worked by Plaintiffs. Assuming that there is an employment relationship between Plaintiffs and Von Paris, under the FLSA and

MWHL, the Plaintiffs are entitled to overtime pay at a rate of time-and-a-half for each overtime hour worked. 29 U.S.C. § 206-07; Md. Code Ann., Lab. & Empl., § 3-415(a).

Plaintiffs allege that they often worked more than 40 hours per week. Specifically, Plaintiffs allege that they worked an average of 16 hours of overtime each week for 12 weeks, for a total of 192 overtime hours each. But because Plaintiffs did not record their work hours in any way, such as a time clock or time sheets, and because Von Paris did not maintain any records of Plaintiffs' work hours, Von Paris alleges no knowledge of Plaintiffs' actual work hours, and therefore disputes Plaintiffs' claims.

Fourth, the parties dispute how overtime pay should be calculated. Plaintiffs allege that their overtime pay liability should be calculated by dividing their promised weekly pay rate of $450 by 40 to determine their effective hourly rate, and that they should receive one-and-one-half times that hourly rate for all overtime hours worked. Using the number of overtime hours alleged by Plaintiffs (16 hours per week for 12 weeks), Plaintiffs' method of computation results in total overtime liability of $3,240 for each Plaintiff, as calculated below:

> $450 per week ÷ 40 hours = $11.25 per hour
> $11.25 per hour × 1.5 × 16 hours × 12 weeks = $3,240

In contrast, Von Paris alleges that because Plaintiffs' $450 fixed weekly salary was intended to compensate Plaintiffs for all hours worked, including the overtime hours, the "fluctuating work week" ("FWW") method under 29 C.F.R. § 778.114 should be used to calculate the overtime pay owed. Under that method, since Plaintiffs' fixed weekly salary fully compensated Plaintiffs for the straight-time portion of their time-and-a-half overtime pay, Plaintiffs may recover only the half-time overtime premium—i.e., they may recover only one-half of their effective hourly rate for the overtime hours worked. Using the same numbers of

overtime hours alleged by Plaintiffs, the FWW method results in total overtime liability of only $771.43 for each Plaintiff, as calculated below:

> \$450 per week ÷ 56 hours = \$8.04 per hour
> \$8.04 per hour × ½ × 16 hours × 12 weeks = \$771.43

These differing methods of computation advocated by the parties have a substantial impact on the overtime pay liability, as they result in a difference of $2,468.57 ($3,240 – $771.43) in overtime pay liability for each Plaintiff.

Fifth, the parties dispute whether Plaintiffs may recover liquidated damages. Under the FLSA and MWHL, a prevailing plaintiff may recover, as liquidated damages, an amount equal to the award of overtime pay. 29 U.S.C. § 216(b); Md. Code Ann., Lab. & Empl. § 3-427(d)(1)(ii). However, liquidated damages may not be awarded, or they may be awarded in an amount less than the full allowable amount, if the employer acted in good faith and reasonably believed that it did not violate the law by paying the employee less than the overtime wages owed to him. 29 U.S.C. § 260; Md. Code Ann., Lab. & Empl. § 3-427(d)(2).

Plaintiffs assert that an employment relationship existed and that Plaintiffs are owed the wages claimed by them, and that Von Paris is liable for liquidated damages. Von Paris maintains that liquidated damages are not available because it acted in good faith and reasonably believed that it owed no overtime pay to Plaintiffs.

In light of the foregoing, the Court concludes that a *bona fide* dispute exists as to Von Paris's liability under the FLSA. Indeed, the parties' arguments on Von Paris's Motion to Dismiss as to the FLSA claims primarily concerned whether or not Plaintiffs could be considered employees of Von Paris for purposes of the FLSA under the "economic reality" test. In the Joint Motion, the parties continue to dispute this point. The Court finds this dispute genuine, whose resolution would depend on both further factual development as well as rulings of law.

The other disputes raised by the parties (the applicability of the motor carrier exemption, the number of overtime hours worked, the method of calculating overtime pay liability, and whether liquidated damages are available) appear to have been raised for the first time on the Defendant's Answer to the Amended Complaint, and have not received extensive factual development or briefing. Nevertheless, the Court has no reason to believe that these disputes are anything but genuine.

**IV.**

Fairness and Reasonableness

If a *bona fide* dispute is found to exist, courts must then evaluate the fairness and reasonableness of the settlement based on the following factors:

> "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery."

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

Having reviewed the parties' submissions and after considering the relevant factors enumerated by the *Lomascolo* court, the Court concludes that the Settlement Agreement is a fair and reasonable compromise of the parties' *bona fide* dispute.

The case is settling at an early stage; indeed, the parties do not represent that any discovery, formal or informal, has taken place. In *Saman*, which settled at a similarly early stage, plaintiff's counsel averred that he had the opportunity through mediation to review wage/hour records of sufficient quantity and quality to determine the potential range of recovery in the case. *See Saman*, 2013 WL 2949047, at *3. On this basis, Judge Chasanow of this Court concluded that the parties had had sufficient opportunity to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations. *See id.*

(citing *Lomascolo*, 2009 WL 3094955, at *11). Although counsel in the present case have not made similar contentions, the Court notes that the parties have jointly represented that Von Paris did not maintain any records of Plaintiffs' work, including records of work hours or compensation, and that the Plaintiffs did not record their work hours in any way, such as though a time clock or time sheets. Instead, both parties have calculated overtime wages by relying upon Plaintiffs' own allegations of the number of hours that they worked overtime (e.g. an average of 16 hours of overtime each week for 12 weeks).

Indeed, the most significant disputes between the parties center on whether an employment relationship existed at all, whether the Plaintiffs were exempt from the overtime requirements under the motor carrier exception, and the correct method of computing any overtime payment. Each of these disputes would necessitate discovery and further briefing on collateral issues; for example, on Von Paris's power to hire, fire, supervise, and control Plaintiffs. The Plaintiffs aver that they have considered each of the foregoing risks, as well as the burden, time and expense of further litigation, in agreeing to a settlement that will pay them less than all of the wages, liquidated damages, attorneys' fees and costs that they seek. Given the parties' submissions at the Motion to Dismiss (which focused on the existence of an employment relationship) as well as through the Joint Settlement, the Court is satisfied the parties have had sufficient opportunity to evaluate their claims and defenses as to these disputed legal and factual issues and to engage in informed arms-length settlement negotiations.

Similarly, the Court finds no fraud or collusion in the proposed settlement, given the experience of Plaintiffs' counsel, and the endorsement of settlement by counsel for both parties, the quality of the filings submitted to date and the vigorous representation by counsel during the Motion to Dismiss.

Finally, as to the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery, the Court is satisfied that $4500 in settlement of each Plaintiff's claim is fair and reasonable under the circumstances. Using Plaintiffs' method of computing overtime pay, the total alleged unpaid wages, including both base pay and overtime pay, are $10,140 for Brown ($6,900 base pay + $3,240 overtime pay) and $8,340 for Coles ($5,100 base pay + $3,240 overtime pay). Using Von Paris's fluctuating work week method of computing overtime pay, the total unpaid wages are $7,671.43 for Brown ($6,900 base pay + $771.43 overtime pay) and $5,871.43 for Coles ($5,100 base pay + $771.43 overtime pay). Thus, the $4,500 payment in settlement of each Plaintiff's claim represents between 44% and 59% of the amount of wages claimed by Brown (exclusive of any potential treble or liquidated damages) and between 54% and 77% of the amount of wages claimed by Coles (exclusive of any potential treble or liquidated damages). In light of Von Paris's serious arguments that Plaintiffs are barred as a matter of law from recovering any wages at all from Von Paris, these proposed settlement amounts are reasonable under the circumstances.[2]

**V.**

[2] The Court notes that the proposed Settlement Agreement contains a release of all claims against Defendant Singleton, who is not a party to the agreement, has never entered an appearance in this Court, and against whom a default judgment is pending. The proposed Settlement Agreement also contains a broad release of liability from all claims arising out of the Plaintiffs' employment relationship with Von Paris or Singleton. While some courts have held that an overly broad release provision can render an FLSA agreement unreasonable if the release includes claims unrelated to those asserted in the complaint, *Saman*, 2013 WL 2949047, at *5 (citing cases), if the employee is compensated reasonably for the release executed, the settlement can be accepted, and the Court is not required to evaluate the reasonableness of the settlement as to the non-FLSA claims. *See Duprey v. Scotts Co. LLC*, 2014 WL 2174751, at *4 (D. Md. May 23, 2014). In *Duprey*, the plaintiff was compensated for almost eighty percent of his back pay when calculated using the less generous fluctuating workweek method, plus an additional $2,250 in liquidated damages. Judge Grimm of this Court found that this percentage fairly compensated the plaintiff for the general release executed. *See id.* Here, each of the Plaintiffs claim $3,240 in overtime pay under the FLSA, while Von Paris counters that they are owed only $771 under the fluctuating workweek method. Never the less, each Plaintiff receives $4500 under the settlement agreement. Although the Settlement Agreement does not explicitly account for the portion of the $4500 that compensates the Plaintiffs for their FLSA overtime claims and the portion that compensates the Plaintiffs for their non-FLSA base pay claims, the fact remains that Plaintiffs' total recovery exceeds the amount that they claimed in overtime under the FLSA. Accordingly, the Court finds that the broad general release provision does not render the Agreement unreasonable as to Plaintiff's FLSA claims.

Attorneys' Fees

The reasonableness of the fee award proposed in an FLSA settlement must be independently assessed, regardless of whether there is any suggestion that a "conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Lane*, 2011 WL 3880427, at *3 (citing *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1243 (M.D. Fla. 2010)). In making that assessment, courts typically use the principles of the traditional lodestar method as a guide. *Id.* (citing cases).

Traditionally, in calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a reasonable hourly rate multiplied by hours reasonably expended. *Duprey v. Scotts Co. LLC*, 2014 WL 2174751, at *6 (D. Md. May 23, 2014) (citing *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012)). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 890 n. 11 (1984)). In Appendix B to its Local Rules, this Court has established rates that are presumptively reasonable for lodestar calculations. *Id.* (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000)). Plaintiffs should also provide all documentation necessary for the Court to make a lodestar determination as to the hours reasonably expended, including but not limited to declarations establishing the hours expended by counsel, broken down for each task. *See Saman*, 2013 WL 2949047, at *7; Local Rule 109.2; Appendix B to the Local Rules.

Plaintiffs' counsel charges $275 per hour for senior counsel, $125 per hour for junior associate time and $50 per hour for paralegal time. Plaintiffs' senior counsel has been a member

of the bar for nine years. Viewed in light of the Guidelines contained in Appendix B of the Local Rules, the Court finds these hourly rates to be reasonable.

Plaintiffs' counsel and her staff spent "approximately" 51 hours litigating this matter, including preparing a complaint and an amended complaint, preparing a motion for entry of default, successfully defending Plaintiffs against Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, negotiating the settlement for both Plaintiffs and preparing substantial portions of the proposed Findings of Fact and Conclusions of Law. *See* Corrected Proposed Findings of Fact and Conclusions of Law, at 17 [Dkt. 36]. The parties submit that Plaintiffs' counsel has incurred $12,024.99 in fees and costs to litigate this matter. Of that amount, $578.49 was advanced for court costs and other expenses.

The Court notes that counsel have not submitted "a detailed description of the work performed broken down by hours or fractions thereof" or "a listing of any expenditures for which reimbursement is sought." Local Rule 109.2.b. Nor have they specified which of the approximately 51 billed hours apply to which counsel's different billing rates.[3]

Despite these deficiencies, the Court, in its discretion, is satisfied that the 51 hours expended by Plaintiffs' counsel are reasonable, especially in light of the vigorously contested Motion to Dismiss, the lack of records of work hours or compensation, and the atypical employment relationship between Von Paris and the Plaintiffs. *See, e.g.*, *Duprey*, 2014 WL 2174751, at *7 (finding 34.4 billed hours reasonable for an FLSA overtime case that settled prior to contesting a Motion to Dismiss). Moreover, the settlement of $9,000.00 in attorneys' fees and costs represents approximately 75% of the $12,024.99 in fees and costs incurred by Plaintiffs, a reduction that reasonably reflects the substantial risks associated with taking the case to trial.

[3] The Court observes that 51 hours multiplied by Plaintiffs' counsel's highest billing rate of $275 exceeds the total amount of fees claimed. Accordingly, Plaintiffs' counsel's fees clearly included at least some time incurred at the lower billing rates.

Accordingly, the Court finds the attorney fee award of $9,000 in the proposed settlement to be reasonable.

## VI.

## Conclusion

For the foregoing reasons, the Court **GRANTS** the Joint Motion for Settlement [Dkt. 33], **VACATES** the entry of default against Defendant Wesley Singleton [Dkt. 30], and **DISMISSES WITH PREJUDICE** all remaining counts of the Amended Complaint [Dkt. 25] as to all Defendants. A separate Order will **ISSUE**.

**/s/**
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**December 3, 2014**